UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HAIEK ANTANESIAN and PATRICK O'MEARA,

                   Plaintiffs,    14 CV 1311

                                                       COMPLAINT

        -against-

THE CITY OF NEW YORK,
TRAFFIC AGENT CHARLEEN MAHLUNG (TAX 357779),    **PLAINTIFFS DEMAND**
POLICE OFFICER PAUL LAW (TAX 947161),    **A TRIAL BY JURY**
and JOHN DOES 1-3,

                   Defendants.
------------------------------------------------------------X

        Plaintiffs, Haiek Antanesian and Patrick O'Meara, by their attorneys, Reibman & Weiner, as and for their Complaint, hereby allege as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.    At all times hereinafter mentioned, plaintiff Haiek Antanesian was an adult male resident of Queens County, within the State of New York.

        2.    At all relevant times hereinafter mentioned, plaintiff Patrick O'Meara was an adult male resident of Queens County, within the State of New York.

        3.    At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        4.    At all relevant times hereinafter mentioned, defendant TRAFFIC AGENT

CHARLEEN MAHLUNG (TAX 357779), was an adult female employed by the City of New York as a member of the NYPD assigned to the Transit Bureau Manhattan Summons Enforcement Division. Defendant Mahlung is sued herein in her official and individual capacities.

5. At all relevant times hereinafter mentioned, defendant POLICE OFFICER PAUL LAW (TAX 947161), was an adult male employed by the City of New York as a member of the NYPD assigned to the 19th Precinct. Defendant Law is sued herein in his official and individual capacities.

6. At all relevant times hereinafter mentioned, defendants JOHN DOES 1-3, were individuals employed by the City of New York as members of the NYPD whose identities are unknown. The Doe defendants are sued herein in their official and individual capacities.

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

8. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Southern District of New York, where the defendant City of New York resides, and where the actions complained of herein occurred.

9. That plaintiffs timely served Notices of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

10. At least thirty days have elapsed since service of plaintiffs' Notices of Claim and adjustment and payment thereof has been neglected or refused.

11. That the within action has been initiated within one year and ninety days of the accrual of plaintiffs' claims pursuant to New York State Law.

## RELEVANT FACTS

12. On February 28, 2013 (the "Date of the Arrest"), at about 1:30 p.m., plaintiffs were lawfully present in front of 223 East 60th Street, County, City and State of New York (the "Scene of the Arrest").

13. At this time, the plaintiffs were unloading items from an apartment unit in the building into their work van, which was parked in front of the building.

14. At this time, defendant Mahlung approached the plaintiffs and began issuing plaintiff Antanesian a ticket for being illegally parked.

15. Defendant Mahlung completed issuing a parking ticket to plaintiff Antanesian and handed it to him.

16. Plaintiff O'Meara and defendant Mahlung then got into an argument about the propriety of the ticket.

17. At no time was either plaintiff engaged in any unlawful or suspicious activity.

18. Defendant Mahlung then stated to Mr. Antanesian, in sum and substance, that because of Mr. O'Meara, Mr. Antanesian was going to be arrested.

19. At or about this time, Defendant Law and the Doe defendants arrived at the scene on duty.

20. Each of the Doe defendants were members of the NYPD, and one of the Doe defendants was defendant Mahlung's supervisor.

21. Defendant Mahlung falsely informed the other defendants that plaintiff Antanesian had assaulted her.

3

22. Defendant Law and the Doe defendants first sought out and did speak to defendant Mahlung, and made no attempt to obtain an account of what happened from the plaintiffs.

23. Before arresting the plaintiffs, at least one of the Doe defendants sought out witnesses to the incident.

24. The defendants spoke to a witness at the scene who informed them that he had observed the interaction between defendant Mahlung and plaintiffs.

25. Upon information and belief, this witness informed the defendants that he had witnessed the conversation between plaintiffs and defendant Mahlung, that defendant Mahlung was lying, and that the plaintiffs never assaulted her in any way.

26. The plaintiffs themselves, as well as another witness at the scene, also continued to inform the defendants that plaintiffs had done nothing wrong.

27. Plaintiffs were not engaged in any suspicious or illegal activity and there was no legal basis or justification for the defendants to approach and detain plaintiffs.

28. Despite the absence of any evidence of wrongdoing on the part of plaintiffs, the defendants searched plaintiffs.

29. The search yielded no evidence of any guns, drugs, or contraband.

30. Despite the lack of physical evidence, and despite the fact that the defendants had actually found corroborating witnesses to plaintiffs' version of events, the defendants formally arrested the plaintiffs.

31. One of the Doe defendants then took the parking summons that had been issued to plaintiff Antanesian, and mailed it to him.

4

32. At no time did plaintiffs resist arrest, assault defendant Mahlung, or engage in any violent or threatening behavior.

33. At no time did there exist any basis to utilize any level of force against the plaintiffs, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

34. The decision to arrest plaintiffs was objectively unreasonable under the circumstances.

35. At no time did there exist sufficient cause to seize or arrest plaintiffs, nor could the defendants have reasonably believed that such cause existed.

36. Plaintiffs were then transported to a local area precinct believed to be the 19th Precinct, where they were held for several hours before they were transferred to New York County Central Booking, where they were held for several more hours.

37. Plaintiff O'Meara was eventually summarily released from custody without explanation and without being charged.

38. Accordingly, any charges related to his arrest were resolved in his favor.

39. Approximately twenty four hours after his arrest, plaintiff Antanesian was arraigned on a criminal complaint containing false allegations supplied by defendant Mahlung, and which defendant Law and the Doe defendants knew, or had reason to know, were false.

40. Specifically, plaintiff Antanesian was arraigned on two counts of Assault in the Third Degree, one count of Obstructing Governmental Administration in the Third Degree, one count of Attempted Assault in the Third Degree, and one count of Harassment in the Second Degree.

41. In support of the criminal complaint, defendant Mahlung falsely stated, *inter alia*, that she observed Mr. Antanesian cover the registration sticker on his car, and that she observed him strike her with a closed fist.

42. These and other allegations contained in the complaint were false and defendant Mahlung knew them to be false when she made them.

43. Plaintiff was prosecuted for over one year pursuant to these false allegations before the charges against him were dismissed.

44. During this time he was forced to make several court appearances.

45. Each of the other individual defendants knew, or had reason to know, that defendant Mahlung's allegations were false and not credible.

46. Defendant Law and the Doe defendants conducted an investigation of defendant Mahlung's allegations at the scene of the arrest. Finding no one to corroborate Mahlung's story, the defendants nonetheless arrested the plaintiffs.

47. The factual allegations sworn to by defendant Mahlung against plaintiffs were materially false and deliberately made to justify the illegal arrest by defendants against plaintiffs.

48. Defendant Mahlung also presented these false allegations in several reports and items of paperwork used to prosecute plaintiff Antanessian, including but not limited to, the Complaint Room Screening Sheet.

49. At no time did defendants take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against plaintiffs.

50. The individual defendants, including defendant Mahlung, nonetheless

continued to prosecute plaintiff through her false sworn statements and information provided to the New York County District Attorney's Office.

51. Defendant Mahlung had several meetings with the New York County District Attorney's Office during which she falsely represented that plaintiff Antanesian had assaulted her.

52. Defendant Mahlung made a conscious decision to present an altered version of what transpired on the date of the incident, and then made a conscious decision to omit and falsify information in her reports, evidence, and other paperwork, including in statements provided to defendant Law, the Doe defendants, and the New York County District Attorney's Office.

53. Defendant Law and the Doe defendants chose to defer to defendant Mahlung, a fellow member of the NYPD, even though several witnesses at the scene informed them that she was lying and that the plaintiff Antanesian never struck her.

54. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

55. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

56. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

7

## FIRST CAUSE OF ACTION

57. Plaintiffs repeat the allegations in each of the foregoing paragraphs as though stated fully herein.

58. At no time did defendants have any legal basis for arresting or imprisoning plaintiffs, commencing criminal process, or using physical force against them, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

59. Defendants willfully and intentionally seized, searched, detained, and arrested plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

60. By so doing, the individual defendants, individually and collectively, subjected plaintiffs to excessive force, false arrest and imprisonment, unlawful searches of person and property, and subjected plaintiff Antanesian to denial of due process and fair trial, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

61. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

62. Plaintiffs repeat the allegations contained in each of the foregoing paragraphs as though stated fully herein.

63. Defendant City of New York was responsible for ensuring that reasonable

8

and appropriate levels of supervision were in place within and/or over the NYPD.

64.     Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiffs herein.

65.     The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiffs' arrests.

66.     All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

67. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Using excessive force on individuals, including but not limited to those who have already been handcuffed;

    b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    c. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

    d. Retaliating against officers who report police misconduct; and

    e. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

68. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

    a. *Thompson v. City of New York*, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

    b. *Lotorto v. City of New York*, 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

    c. *Zabala v. City of New York*, 37711/2010 (Sup. Ct., Kings Co.);

    d. *Ashe v. City of New York*, 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e. *Long v. City of New York*, 09-CV-9216 (AKH) (S.D.N.Y.);

    f. *Moise v. City of New York*, 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

    g. *Taylor-Mickens v. City of New York*, 09-CV-7923 (RWS) (SD.N.Y.);

    h. *Carmody v. City of New York*, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207;

    i.    *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

    j.    *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

    k.    *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

    l.    *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

    m.    *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

    n.    *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

    o.    *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

    p.    *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

    q.    *Walton* v. *Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

    r.    *White-Ruiz* v. *The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

    s.    *Ariza* v. *City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

69.    In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

70. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

71. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiffs' rights in particular.

72. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

### THIRD CAUSE OF ACTION

73. Plaintiffs repeat the allegations contained in each of the foregoing paragraphs as though stated fully herein.

74. Plaintiffs were subjected to false arrest, assault, and battery.

75. Plaintiff Antanesian was also subjected to denial of due process and fair trial through the defendants' use of fabricated evidence and the making of false statements.

76. At no time did defendants have any legal basis for arresting plaintiffs, subjecting them to excessive force, or commencing criminal process against them, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

77. The defendants are therefore liable under New York law to plaintiffs for

false arrest, assault and battery.

78. Defendants are therefore also liable under New York law to plaintiff Antanesian for denial of due process and fair trial.

79. By reason thereof, defendants have caused plaintiffs to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i. On the First Cause of Action, damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

ii. On the First Cause of Action, punitive damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

iii. On the Second Cause of Action, damages in a substantial sum of money against the City of New York in an amount to be determined at trial;

iv. On the Third Cause of Action, damages in a substantial sum of money against the City of New York and the individual defendants in an amount to be determined at trial;

    v.      Statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

    vi.      Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
       February 26, 2014

By: _____
Jessica Massimi (JM-2920)
Reibman & Weiner
Attorneys for Plaintiff
26 Court Street, Suite 1808
Brooklyn, New York 11242
718-522-1743